# Exhibit 16

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

**If You Entered into a CDS Transaction Between January 1, 2008 and September 25, 2015, You May Be Affected by Class Action Settlements.**

"CDS" means any and all types of credit default swap(s) and CDS-based products, including, without limitation, single-name CDS, CDS on corporate, sovereign and municipal reference entities, tranche CDS, basket CDS, index CDS, and CDS futures. A "CDS Transaction" means (i) any purchase, sale, trade, assignment, novation, unwind, termination, or other exercise of rights or options with respect to any CDS, whether executed over-the-counter or via inter-dealer brokers, a centralized clearinghouse, a central limit order book, an exchange, a swap execution facility, or any other platform or trading facility; or (ii) any decision to withhold a bid or offer on, or to decline to purchase, sell, trade, assign, novate, unwind, terminate or otherwise exercise any rights or options with respect to any CDS.

*A federal court authorized this Notice. This is not a solicitation from a lawyer.*

- This notice is to alert you to settlements reached with defendants Bank of America Corporation and Bank of America, N.A.; Barclays Bank PLC; BNP Paribas; Citigroup Inc., Citibank, N.A., and Citigroup Global Markets Inc.; Credit Suisse AG; Deutsche Bank AG; Goldman, Sachs & Co.; HSBC Bank PLC and HSBC Bank USA, N.A.; JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A.; Morgan Stanley & Co. LLC; Royal Bank of Scotland PLC and Royal Bank of Scotland N.V.; UBS AG and UBS Securities LLC; International Swaps and Derivatives Association; Markit Group Holdings Ltd. and Markit Group Ltd. (collectively, "Defendants") in a class action.

- The lawsuit alleges that Defendants engaged in anticompetitive acts that affected the price of CDS in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. The lawsuit also alleges that Defendants were unjustly enriched under common law by their anticompetitive acts. The lawsuit was brought by, and on behalf of, purchasers or sellers of CDS. The Defendants deny they did anything wrong.

- Settlements have been reached with all Defendants. Defendants have collectively agreed to pay $1,864,650,000 ("Settlement Fund"). Before any money is paid, the Court will have a hearing to decide whether to approve the settlements. Approval of these settlements by the Court will resolve all relevant claims with finality and this lawsuit in its entirety.

- The two sides disagree on how much money could have been won if the plaintiffs had won a trial.

- Your legal rights will be affected whether you act or don't act. Please read the entire Notice carefully.

For more information, call 1-888-744-0531 or visit **www.CDSAntitrustSettlement.com**.

| YOUR LEGAL RIGHTS AND OPTIONS IN THESE SETTLEMENTS: | |
|---|---|
| SUBMIT A CLAIM FORM | The only way to receive your share of the Settlement Fund. |
| EXCLUDE YOURSELF | Get no payment. This is the only option that allows you to ever be part of any other lawsuit against Defendants about the legal claims in this case. |
| COMMENT OR OBJECT | Write to the Court about why you do or do not like the settlements. |
| GO TO A HEARING | Ask to speak in Court about the fairness of the settlements. |
| DO NOTHING | Get no payment. Give up rights. |

- The Court in charge of this case must decide whether to approve the settlements. Payments will be made if the Court approves the settlements and, if there are any appeals, after appeals are resolved.

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION**………………..…………………………………………………………………………………………..PAGE 3

1. Why did I get this Notice?

2. What is this litigation about?

3. Why is this a class action?

4. Why are there settlements?

**WHO CAN PARTICIPATE IN THE SETTLEMENTS**……………………………………………………………………….PAGE 5

5. How do I know if I am part of the settlements?

6. Are there exceptions to being included in the Settlement Class?

7. What if I'm still not sure if I am included in the Settlement Class?

**THE SETTLEMENT BENEFITS**………………………………………………………………………………………………….PAGE 6

8. What do the settlements provide?

9. Can the Settlement Amount be reduced or the Settlement terminated?

10. Will I get a payment?

11. How can I get a payment?

12. When will I receive a payment?

13. What am I giving up to get a payment or stay in the Settlement Class?

**EXCLUDING YOURSELF FROM THE SETTLEMENTS**……………………………………………………………………PAGE 10

14. What if I do not want to be in the Settlement Class?

15. How do I get out of the settlements?

16. If I don't exclude myself, can I sue Defendants for the same thing later?

17. If I exclude myself can I get money from the settlements?

18. If I exclude myself, can I comment on the settlements?

**COMMENTING ON OR OBJECTING TO THE SETTLEMENTS………………………………………………………PAGE 11**

19. How can I tell the Court what I think about the settlements?

20. What's the difference between objecting and excluding?

**THE LAWYERS REPRESENTING YOU ……………………………………………………………………………………..PAGE 12**

21. Do I have a lawyer in this case?

22. How will the lawyers be paid?

**THE COURT'S FAIRNESS HEARING………………………………………………………………………………………PAGE 13**

23. When and where will the Court decide whether to approve the settlements?

24. Do I need to come to the hearing?

25. May I speak at the hearing?

**IF YOU DO NOTHING …………………………………………………………………………………………………………PAGE 13**

26. What happens if I do nothing?

**GETTING MORE INFORMATION ………………………………………………………………..…………..…………..PAGE 13**

27. How do I get more information?

**BASIC INFORMATION**

**1. Why did I get this Notice?**

You or your company may have entered into a CDS Transaction between January 1, 2008 and September 25, 2015. CDS means any and all types of credit default swap(s) and CDS-based products, including, without limitation, single-name CDS, CDS on corporate, sovereign and municipal reference entities, tranche CDS, basket CDS, index CDS, and CDS futures. A CDS Transaction means (i) any purchase, sale, trade, assignment, novation, unwind, termination, or other exercise of rights or options with respect to any CDS, whether executed over-the-counter or via inter-dealer brokers, a centralized clearinghouse, a central limit order book, an exchange, a swap execution facility, or any other platform or trading facility; or (ii) any decision to withhold a bid or offer on, or to decline to purchase, sell, trade, assign, novate, unwind, terminate or otherwise exercise any rights or options with respect to any CDS.

You have the right to know about this litigation and about your legal rights and options before the Court decides whether to approve the proposed settlements. If the Court approves the settlements and after any objections or appeals are resolved, an administrator appointed by the Court will make the payments that the settlements allow. You will be informed of the progress of the settlements.

This Notice explains the litigation, the proposed settlements, your legal rights, what benefits are available, who is eligible for them, and how to get them.

The Court supervising the case is the United States District Court for the Southern District of New York. The case is called In re: Credit Default Swaps Antitrust Litigation, Master Docket No.: 13 MD 2476 (DLC). The people who sued are called Class Plaintiffs, and the companies they sued are called Defendants.

**2. What is this litigation about?**

The lawsuit alleges that Defendants engaged in anticompetitive acts that affected the price of CDS in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. The lawsuit also alleges that Defendants were unjustly enriched under common law by their anticompetitive acts. The lawsuit was brought by, and on behalf of, purchasers and sellers of CDS. The lawsuit is proceeding in the United States District Court for the Southern District of New York before Judge Denise L. Cote.

The entities that prosecuted this lawsuit, referred to as "Class Plaintiffs," are the Los Angeles County Employees Retirement Association; Salix Capital US Inc.; Value Recovery Fund LLC; Delta Institutional, LP; Delta Onshore, LP; Delta Offshore, Ltd.; Delta Pleiades, LP; and Essex Regional Retirement System. They sued twelve CDS dealers, referred to as the "Dealer Defendants." The Dealer Defendants are Bank of America Corporation and Bank of America, N.A.; Barclays Bank PLC; BNP Paribas; Citigroup Inc., Citibank, N.A., and Citigroup Global Markets Inc.; Credit Suisse AG; Deutsche Bank AG; Goldman, Sachs & Co.; HSBC Bank PLC and HSBC Bank USA, N.A.; JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A.; Morgan Stanley & Co. LLC; Royal Bank of Scotland PLC and Royal Bank of Scotland N.V.; UBS AG and UBS Securities LLC. In addition, Class Plaintiffs sued International Swaps and Derivatives Association ("ISDA"); Markit Group Holdings Ltd. and Markit Group Ltd. ("Markit"). The Dealer Defendants, ISDA, and Markit are referred to collectively as "Defendants."

Among other things, Class Plaintiffs allege that, beginning in 2008, Defendants conspired to prevent exchange trading of CDS at secret meetings and through telephone and email communications. Class Plaintiffs allege that the Dealer Defendants agreed with each other not to deal with any central clearing platform that might allow CDS trading and instead to clear almost all transactions through the one clearinghouse they could control, ICE Clear Credit LLC ("ICE"). Class Plaintiffs further allege that the Dealer Defendants conspired to limit changes to the over-the-counter CDS market and imposed rules restricting participation in ICE that were designed to prevent a transition to exchange trading. Class Plaintiffs allege that the Dealer Defendants pressured Markit and ISDA not to grant any licenses that allowed CDS to trade via central limit order book or on an exchange platform, thus ensuring that some Dealer Defendant be on at least one side of every CDS transaction. According to Class Plaintiffs, Defendants' conduct harmed Settlement Class Members by keeping the CDS market opaque, preventing competition, and maintaining inflated bid/ask spreads on CDS Transactions. The Defendants deny they did anything wrong.

**3. Why is this a class action?**

A class action is a lawsuit in which a few representative plaintiffs bring a lawsuit on behalf of themselves and other similarly situated persons (i.e., the class) who have similar claims against the defendants. The plaintiffs, the Court, and counsel appointed to represent the class all have a responsibility to make sure that the interests of all class members are adequately represented.

Importantly, class members are NOT individually responsible for the attorneys' fees or litigation expenses. In a class action, attorneys' fees and litigation expenses are paid from the settlement fund (or the court judgment amount) and must be approved by the Court. If there is no recovery, the attorneys do not get paid.

When a class enters into settlements, such as these settlements with Defendants here, the Court will require that the members of the class be given notice of the settlements and an opportunity to be heard. The Court then holds a hearing to determine, among other things, if the settlements are fair, reasonable, and adequate to the members of the class.

**4. Why are there settlements?**

The Court did not decide in favor of Class Plaintiffs or Defendants. Class Plaintiffs and their Co-Lead Counsel thoroughly investigated the facts and law regarding the claims at issue in this litigation, as well as Defendants' potential defenses.  As a result, Class Plaintiffs think they could have won substantial damages at trial. Defendants think Class Plaintiffs'  claims lack merit. Defendants believe the trial court or an appellate court would have prevented Class Plaintiffs from litigating the case as a class action. Defendants also believe the claims would have been rejected either prior to trial, at trial or on appeal.  In all events, Defendants do not believe Class Plaintiffs could have proven any damages to the putative class. None of those issues were decided. Instead, after engaging in lengthy, detailed negotiations with the help of a nationally-recognized mediator, all parties agreed to settle the case. That way, they will avoid the cost and risk of adverse outcomes before or after trial or on appeal, and the people affected will get compensation. Class Plaintiffs and their Co-Lead Counsel think the settlements are best for all Settlement Class Members.

**WHO CAN PARTICIPATE IN THE SETTLEMENTS**

**5. How do I know if I am part of the settlements?**

The Court decided that everyone who fits this description is a Settlement Class Member: All persons or entities (together, "Persons") who, during the period of January 1, 2008 through September 25, 2015, purchased CDS from or sold CDS to the Dealer Defendants, their respective affiliates, or any purported co-conspirator, in any Covered Transaction.  The settlement agreements define a Covered Transaction as follows:

"A purchase or sale of CDS shall be deemed to be a "Covered Transaction" in each of the following circumstances:  (i) if the purchase or sale was by or on behalf of a Person either domiciled or located (*e.g.*, had a principal place of business) in the United States or its territories at the time of such purchase or sale; (ii) if the Person was domiciled and located outside the United States and its territories at the time of any such purchase or sale, where such purchase or sale was in United States commerce; or (iii) where such purchase or sale otherwise falls within the scope of the U.S. antitrust laws."

Examples of a "Covered Transaction" include: (i) you are domiciled or located in the United States or its territories and you made a CDS Transaction with a Dealer Defendant or one of its affiliates; (ii) you are domiciled and located outside the United States or its territories and you made a CDS Transaction with a Dealer Defendant or one of its affiliates located in the United States or its territories; or (iii) you are domiciled and located outside the United States or its territories and you made a CDS Transaction with a Dealer Defendant or one of its affiliates that was executed through a desk located in the United States or its territories.

The above examples are not intended to be exclusive of what constitutes a "Covered Transaction."  To the extent you believe you made a CDS Transaction that is a "Covered Transaction," you will be given the opportunity to identify that transaction and submit supporting evidence to the claims administrator.

**6. Are there exceptions to being included in the Settlement Class?**

Yes. You are not included in the Settlement Class if you are:

- a Defendant, or its current subsidiary or affiliate;

- an officer, director, management, or employee of a Defendant; or

- a Person whose exclusion is mandated by law.

However, "Investment Vehicles" are not excluded from the Settlement Class. For purposes of the settlements, an Investment Vehicle means any investment company or pooled investment fund, including, but not limited to: (i) mutual fund families, exchange-traded funds, fund of funds and hedge funds, in which a Defendant has or may have a direct or indirect interest, or as to which its affiliates may act as an investment advisor, but of which a Defendant or its respective affiliates is not a majority owner or does not hold a majority beneficial interest, and (ii) any Employee Benefit Plan as to which a Defendant or its affiliates acts as an investment advisor or otherwise may be a fiduciary.

**7. What if I'm still not sure if I am included in the Settlement Class?**

If you are still not sure whether you are included in the Settlement Class, you can ask for free help. You can call 1-888-744-0531 or visit www.CDSAntitrustSettlement.com for more information. Or you can fill out and return the proof of claim form described in Question 10 to see if you qualify.

**THE SETTLEMENT BENEFITS**

**8. What do the settlements provide?**

Defendants will collectively pay the Settlement Class $1,864,650,000 (the "Settlement Fund"). The Settlement Fund, less any costs associated with notifying the Settlement Class, claims administration, and Court-awarded attorneys' fees, expenses, and incentive awards to Class Plaintiffs for representing the Settlement Class, will be divided among all Settlement Class Members who send in a valid proof of claim form.

In addition to the cash component, the settlement with ISDA provides for corporate governance reforms on the licensing of ISDA intellectual property, as follows: ISDA will disband the Credit Steering Committee Licensing Sub-Committee and replace it with an independent licensing sub-committee, called the "Licensing Sub-Committee," which will have 8 to 10 members consisting of an equal number of buy-side and sell-side firms. All decisions on licensing will be by simple majority vote. The ISDA Board will delegate full authority to the Licensing Sub-Committee to decide whether to grant requested licenses. If the Licensing Sub-Committee decides not to grant a proposed license, it will provide to the proposed licensee an opportunity to rebut the determination or modify its application. Any decision not to grant a license will be subject to an outside dispute resolution mechanism. All meetings of the Licensing Sub-Committee should be open to the public via broadcast through ISDA's website, unless a proposed licensee objects. Decisions of the Licensing Sub-Committee regarding requests for licenses will be published on ISDA's website, unless a proposed licensee objects.

In the event any Defendant terminates its settlement agreement ("Settlement Agreement") and the litigation of the action continues against that Defendant, Settling Defendants have agreed to provide certain reasonable cooperation including making available up to four current or former employees from each Settling Defendant as witnesses in the ongoing litigation.

**9. Can the Settlement Amount be reduced or the Settlement terminated?**

In certain circumstances each Defendant has the right to request a modification of the Settlement Amount or to terminate the Settlement. The right to seek reduction in the Settlement Amount or to terminate the Settlement is set forth at Paragraphs 11(a) through 11(c) of the Settlement Agreement with each Defendant. Should one or more members of the Settlement Class timely exercise their rights to be excluded from the Settlement Class, a Settling Defendant, if it believes that the total Requests for Exclusion from the Settlement Class represent a material portion of the Covered Transactions and their exclusion would materially reduce the value of Settlement, shall have the option to present the issue to the settlement mediator, Judge Daniel Weinstein (Ret.). In the event Judge Weinstein determines some reduction in the Settlement Amount is

appropriate, he may not reduce the Settlement Amount by greater than a one-to-one ratio. That is, the amount a Settlement Class member who chooses to remain as part of the Settlement Class will receive will be at least the same as if no one had requested exclusion from the Settlement Class. A Settling Defendant may also seek to terminate the Settlement by making an application for termination to Judge Weinstein. Upon such application Judge Weinstein shall determine if the reduction remedy set forth above in this Paragraph is not adequate to preserve the essential benefits of the Settlement to the Settling Defendant making such application. Should a Settlement be terminated, the Parties shall revert to their respective status in the Action as of the date they executed the Settlement Agreement.

**10. Will I get a payment?**

If you are a Settlement Class Member and do not opt out of the Settlement Class, you are eligible to file a proof of claim form to receive your share of money from the Settlements. The amount of your payment will be determined by the Plan of Distribution. Plaintiffs allege that Defendants' anticompetitive conduct artificially inflated the spreads on all CDS transactions throughout the Class Period. Plaintiffs allege that but for Defendants' anticompetitive conduct, some CDS transactions would have migrated from over-the-counter trading to exchanges with a central limit order book, which would have resulted in greater pre- and post-trade transparency and other market efficiencies, thus compressing the artificially-inflated spreads on CDS traded on an exchange and those that would have continued to trade over the counter. This is disputed by Defendants.

Co-Lead Counsel retained experts who constructed a model to identify the amount of inflation of the spreads on any given CDS transaction at any given date during the Class Period. The model uses the database of CDS transactions maintained by the Depository Trust & Clearing Corporation ("DTCC"), produced in this litigation, which all market participants accept as the legal record of a CDS transaction. The model identifies CDS purchase and sales transactions executed from January 1, 2008 through September 25, 2015 which may be eligible to receive distributions from the Net Settlement Fund (the amount remaining after attorneys' fees, litigation costs and claims administration costs have been deducted) under the Settlement Class definition upon proper and timely submission of a claim.

Co-Lead Counsel's experts have identified a spread compression percentage that will be applied to Covered Transactions to generate the amount of each Settlement Class Member's potential claim. Each Settlement Class Member will be sent a claim form that will direct the Settlement Class Member to a secured website maintained by the claims administrator to review information about that member's Covered Transactions, as recorded in the DTCC database. The secured website will provide the Settlement Class Member with: (i) the name of the CDS purchased or sold with the unique identification number (RED Code); (ii) the date of the transaction; (iii) the notional amount of the transaction; (iv) the tenor of the transaction (number of years, typically 5 years); (v) for CDS indices, the series; and (vi) the allowed claim (amount of inflated spread paid) for that CDS transaction.

The Net Settlement Fund will be distributed to all Settlement Class Members who submit claims on a pro rata basis. Specifically, the distribution of the Net Settlement Fund will be based on the percentage of each Settlement Class Member's allowed claim as compared to the sum of all valid, allowed claims that are filed. The Net Settlement Fund will be paid out to Settlement Class Members who make proper and timely claims. No monies revert to Defendants.  The Court must decide whether to approve the proposed Plan of Distribution and will consider that at the Fairness Hearing.

**11. How can I get a payment?**

To qualify for payment, you must send in a proof of claim form. A proof of claim form is attached to this Notice. You may also get a proof of claim form electronically through the settlement website,

www.CDSAntitrustSettlement.com. Read the instructions carefully, fill out the form, include all the documents the form asks for, sign it, and submit it. Proof of claim forms must [be submitted electronically or] be postmarked by _____, 2016.

**12. When will I receive a payment?**

The Court will hold a hearing on _____, 2016, to decide whether to approve the settlements. If the Court approves the settlements, there may be appeals after that. It is always uncertain whether those appeals can be resolved. Resolving them can take time, perhaps more than a year. Everyone who submits a proof of claim form will be informed of the progress of the settlements. Please be patient.

**13. What am I giving up to get a payment or stay in the Settlement Class?**

Unless you exclude yourself, you are staying in the Settlement Class, and that means you can't sue, continue to sue, or be part of any other lawsuit against Defendants or the Released Parties about the legal issues in this case. It also means that all of the Court's orders will apply to you and legally bind you. As described in the Settlement Agreements, upon the Effective Date of settlement, each of the Releasing Parties: (i) shall be deemed to have, and by operation of the Final Judgment and Order of Dismissal, shall have, fully, finally, and forever waived, released, relinquished, and discharged to the fullest extent permitted by law all Released Claims against the Released Parties, regardless of whether such Releasing Party executes and delivers a proof of claim; (ii) shall forever be enjoined from prosecuting in any forum any Released Claim against any of the Released Parties; and (iii) agrees and covenants not to sue any of the Released Parties with respect to any Released Claims or to assist any third party in commencing or maintaining any suit against any Released Party related in any way to any Released Claims. The capitalized terms used in this Paragraph are defined in each Settlement Agreement as follows:

> "Released Parties" means Settling Defendant and all of its respective past, present and future, direct and indirect corporate parents (including holding companies), subsidiaries, related entities and affiliates, associates (all as defined in SEC Rule 12b-2 promulgated pursuant to the Securities Exchange Act of 1934), predecessors, successors, and all of their respective officers, directors, partners, managing directors, employees, agents, contractors, attorneys, legal or other representatives, trustees, trusts, heirs, beneficiaries, estates, executors, administrators, insurers, shareholders, advisors, and assigns. Released Parties does not include any of the other Defendants.

> "Releasing Parties" means individually and collectively each Settlement Class Member, on behalf of themselves and any of their respective past, present, or future officers, directors, stockholders, agents, employees, legal representatives, partners, associates, trustees, parents, subsidiaries, divisions, affiliates, heirs, executors, administrators, purchasers, predecessors, successors, and assigns, regardless of whether the Settlement Class Member submits any claim for payment or receives any such payment pursuant to any claims process that may be established and approved by the Court. In the case of a Settlement Class Member that is an Employee Benefit Plan (or a fiduciary acting on behalf of an Employee Benefit Plan), the terms of the Settlement Agreement shall bind the Employee Benefit Plan and all Persons who may have any claim by reason of their relationship with the Employee Benefit Plan, including all of its fiduciaries, beneficiaries and participants.

> "Released Claims" means any and all manner of claims, causes of action, cross-claims, counterclaims, suits, demands, actions, rights, charges, liabilities, losses, obligations, and

controversies of any kind, nature, or description whatsoever, whether known or unknown, accrued or unaccrued, foreseen or unforeseen, matured or not matured, suspected or unsuspected, liquidated or not liquidated, fixed or contingent, direct or derivative, including "Unknown Claims" as defined in each Settlement Agreement, whether class, individual, representative, or otherwise in nature, whether arising in law or equity or under any statute, regulation, ordinance, contract, or otherwise, for damages, interest, costs, expenses, attorneys' fees, fines, civil or other penalties, or other payment of money, whenever incurred, or for injunctive, declaratory, or other equitable relief, arising from or relating in any way to any conduct, acts, transactions, events, communications, occurrences, statements, omissions, or failures to act (i) occurring prior to June 30, 2014, that are alleged or that could have been alleged in the Action relating in any way to any CDS Transactions or Potential CDS Transactions; provided that the foregoing Released Claims do not include claims based on CDS Transactions or Potential CDS Transactions by Settlement Class Members where such claims involve all of the following three circumstances—the Settlement Class Members are or were not domiciled or located in the United States at the relevant time, their CDS Transactions or Potential CDS Transactions were not in or would not have been in United States commerce, and any claims based on such CDS Transactions or Potential CDS Transactions are or would have been subject only to foreign law; and (ii) occurring prior to the Preliminary Approval Order, relating in any way to the litigation or settlement of this Action, including, without limitation, relating in any way to any settlement discussions, the negotiation of and agreement to this Agreement by the Defendants, or any terms or effect of this Agreement (other than claims to enforce the Agreement).

Without limiting the above definition of "Released Claims," Released Claims include but are not limited to any claims arising from or relating in any way to:

(i) any conduct by any of the Released Parties that has been or could be alleged to be or have been anticompetitive relating to, arising out of, or affecting or potentially affecting any CDS Transaction or Potential CDS Transaction;
(ii) any joint conduct by any of the Released Parties that has been or could be alleged to have unfairly increased the price or widened or otherwise manipulated the spread of any CDS Transaction or Potential CDS Transaction (whether such CDS Transaction or Potential CDS Transaction occurs prior or subsequent to the Final Order Date);
(iii) any joint conduct relating to potential or actual clearinghouses, exchanges, trading platforms and/or other entities directly or indirectly involved or potentially involved with any CDS Transaction or Potential CDS Transaction, including, without limitation, CMDX LLC, Chicago Mercantile Exchange Inc., CME Clearing, Eurex Clearing AG, LIFFE Administration and Management, NYSE Euronext Inc., Intercontinental Exchange, Inc. ("ICE"), ICE US Holding Company L.P., ICE Clear Credit LLC (formerly ICE U.S. Trust LLC), and The Clearing Corporation, and including but not limited to any conduct that has been or could be alleged to have delayed or prevented or manipulated exchange trading or any other method or form of clearing, executing or trading of CDS Transactions through any means or on any actual or potential platform or trading facility;
(iv) any joint conduct relating to potential or actual involvement, participation, or ownership in any organization, entity, working group or other group related in any way to CDS or CDS Transactions, including, without limitation, Markit, The Clearing Corporation, ICE, ICE US Holding Company L.P., ICE Clear Credit LLC (formerly ICE U.S. Trust LLC), and ISDA, including but not limited to any participation by Released Parties or any persons who were or are employees of Settling Defendant at the time on any committees, task forces, Boards, ad hoc committees, or groups of any of the foregoing organizations or entities, and

including but not limited to any joint conduct relating to licensing or requests by any Person for any license(s) from Markit or ISDA;

(v) any joint conduct relating to the ownership, use, license, sublicense, disclosure, release, or consent to release of data pertaining to CDS, CDS Transactions or Potential CDS Transactions; or

(vi) any joint conduct relating to intellectual property ownership, licensing or sublicensing pertaining to CDS Transactions or Potential CDS Transactions, including but not limited to any decision or agreement to license or otherwise permit the use of, or to refuse to license or otherwise permit the use of, any intellectual property or data relating to CDS, CDS Transactions or Potential CDS Transactions, including the terms, if any, on which to offer, authorize or refuse licensing, sublicensing or permitted use of such intellectual property or data.

The above description of the claims you are giving up against Defendants and the Released Parties is only summary. Unless you exclude yourself, you are "releasing" the claims described here, whether or not you later submit a claim. The complete terms, including the definitions of the Effective Date and Unknown Claims, are set forth in the Settlement Agreements, which may be obtained on the settlement website, www.CDSAntitrustSettlement.com, or by contacting the Claims Administrator at 1-888-744-0531.

## EXCLUDING YOURSELF FROM THE SETTLEMENTS

If you don't want a payment from these settlements, but you want to keep the right to sue or continue to sue Defendants, on your own, about the legal issues in this case, then you must take steps to get out of the Settlement Class. This is called excluding yourself—or is sometimes referred to as "opting out" of the Settlement Class.

**14. What if I do not want to be in the Settlement Class?**

If you decide to exclude yourself from, or "opt out" of, the Settlement Class, you will be free to sue Defendants or any of the other Released Parties on your own for the claims being resolved by the settlements. However, you will not receive any money from the settlements, and Co-Lead Counsel will no longer represent you with respect to any claims against Defendants. If you want to receive money from the settlements, do not exclude yourself.

**15. How do I get out of the settlements?**

You can exclude yourself, or "opt out," by sending to the Claims Administrator a written Request for Exclusion stating, "I/we hereby request that I/we be excluded from the proposed Settlement Class in the In re Credit Default Swaps Antitrust Litigation." A Request for Exclusion must be in writing, signed by the Person or his, her, or its authorized representative; it must state, at a minimum, the name, address, and phone number of that Person; identify any and all CDS Transactions (including their respective notional amounts) in which the Person, during the period of January 1, 2008 through September 25, 2015, purchased CDS from or sold CDS to any of the Dealer Defendants, any of their respective affiliates, or any purported co-conspirator, unless that information is not within the Person's possession, custody, or control; and include a signed statement that "I/we hereby request that I/we be excluded from the proposed Settlement Class in the In re Credit Default Swaps Antitrust Litigation."

You cannot exclude yourself by telephone or email. You must do so in writing and by mail. To be valid, your Request for Exclusion must be postmarked by _____, 2016, and mailed to:

Credit Default Swaps Antitrust Litigation
C/O Garden City Group

P.O. Box 10254
Dublin, OH 43017-5754

If you ask to be excluded, you will not get any settlement payment, and you cannot comment on or object to the settlements. You will not be legally bound by the settlements or anything that happens in this lawsuit.

**16. If I exclude myself, can I get money from the settlements?**

No. You will not get any monetary benefits of the settlements, if you exclude yourself.

**17. If I exclude myself, can I comment on the settlements?**

No. If you exclude yourself, you are no longer a member of the Settlement Class and may not comment on or object to any aspect of the settlements.

**COMMENTING ON OR OBJECTING TO THE SETTLEMENTS**

**18. How can I tell the Court what I think about the settlements?**

If you're a Settlement Class Member, you can tell the Court what you think about the settlements. You can comment on or object to any part of the settlements, the Plan of Distribution, the request for attorneys' fees and expenses, or the request for incentive awards to the Class Plaintiffs for representing the Settlement Class. You can give reasons why you think the Court should approve them or not. The Court will consider your views.

If you want to make a comment or objection, you must do so in writing. Your comment or objection must: (i) identify this case, In re: Credit Default Swaps Antitrust Litigation, Master Docket No.: 13 MD 2476 (DLC); (ii) state whether you intend to appear at the Fairness Hearing (though your appearance is not necessary for the Court to consider your views on the settlements); (iii) provide proof that you are a member of the Settlement Class; and (iv) identify the specific grounds for your comment or objection including any reasons why you want to appear and be heard at the Fairness Hearing, as well as all documents or writings that you want the Court to consider.

You cannot make a comment or objection by telephone or email. You must do so in writing and by mail. To be considered by the Court, your comment or objection must be postmarked by _____, 2016, filed with the Clerk of the Court, and mailed to the following addresses:

**Court**
Clerk of the Court
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007-1312

*Co-Lead Counsel for Plaintiffs and the Settlement Class*

| | |
|---|---|
| Daniel L. Brockett | Bruce L. Simon |
| Quinn Emanuel Urquhart & Sullivan, LLP | Pearson, Simon & Warshaw, LLP |
| 51 Madison Avenue, 22nd Floor | 44 Montgomery Street, Suite 2450 |
| New York, New York 10010-1601 | San Francisco, California 94104 |

*Liaison Counsel for Defendants*

Arthur J. Burke
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017

If you do not timely submit a comment or objection, your views will not be considered by the Court or any court on appeal.

**19. What's the difference between objecting and excluding?**

Objecting is simply telling the Court that you do not like something about the settlements. You can object only if you stay in the Settlement Class. Excluding yourself is telling the Court that you do not want to be part of the Settlement Class. If you exclude yourself, you have no basis to object because the settlements no longer affect you.

## THE LAWYERS REPRESENTING YOU

**20. Do I have a lawyer in this case?**

Yes. The Court has appointed the firms listed below to represent you and the Settlement Class in this case:

| | |
|---|---|
| Daniel L. Brockett<br>Quinn Emanuel Urquhart & Sullivan, LLP<br>51 Madison Avenue, 22nd Floor<br>New York, New York 10010-1601<br>(212) 849-7000 | Bruce L. Simon<br>Pearson, Simon & Warshaw, LLP<br>44 Montgomery Street, Suite 2450<br>San Francisco, California 94104<br>(415) 433-9000 |

These lawyers are called Co-Lead Counsel. Co-Lead Counsel will apply to the Court for payment of attorneys' fees and expenses from the Settlement Fund. You will not otherwise be charged for Co-Lead Counsel's services. If you want to be represented by your own lawyer, you may hire one at your own expense.

**21. How will the lawyers be paid?**

To date, Co-Lead Counsel have not been paid any attorneys' fees or reimbursed for any out-of-pocket costs in connection with the litigation.  Any attorneys' fees and reimbursement of costs will be awarded only as approved by the Court in amounts determined to be fair and reasonable.  The Settlement Agreements provide that Co-Lead Counsel may apply to the Court for an award of attorneys' fees and reimbursement of costs out of the Settlement Fund.  Prior to the final approval hearing, Co-Lead Counsel will move for an award of attorneys' fees in an amount that will be consistent with the negotiated fee agreement with Lead Plaintiff Los Angeles County Employees Retirement Association ("LACERA"), not to exceed fourteen percent of the Settlement Fund's total value, as well as reimbursement of litigation costs.  Plaintiffs will also seek incentive awards for the Class representatives, because of their unique efforts and expense taken on behalf of the Class.  The motion by Co-Lead Counsel for attorneys' fees and costs and incentive awards will be available for viewing on the Settlement Website after it is filed.  After that time, if you wish to review the motion papers, you may do so by viewing them at www.CDSAntitrustSettlement.com.

The Court will consider Co-Lead Counsel's requests for attorneys' fees, expenses, and incentive awards at or after the Fairness Hearing.

## THE COURT'S FAIRNESS HEARING

**22. When and where will the Court decide whether to approve the settlements?**

The Court will hold a Fairness Hearing at _:__ _.m. on _____, 2016, at the United States District Court for the Southern District of New York, Daniel Patrick Moynihan United States Courthouse, Courtroom 15B, 500 Pearl Street, New York, NY 10007. The hearing may be moved to a different date or time without additional notice, so you should check www.CDSAntitrustSettlement.com before making travel plans. At the Fairness Hearing, the Court will consider whether the settlements are fair, reasonable and adequate, and whether the Plan of Distribution is fair and adequate. The Court will also consider how much to pay Co-Lead Counsel and whether to approve litigation expenses and incentive awards to the Class Plaintiffs. If there are comments or objections, the Court will consider them at this time. After the hearing, the Court will decide whether to approve the settlements. We do not know how long this decision will take.

**23. Do I need to come to the hearing?**

No. Class Counsel will be prepared to answer any questions the Court may have at the hearing. However, you are welcome to attend the hearing at your own expense. If you send a comment or objection, you do not have to come to Court to explain it. As long as you mailed your written comment or objection on time as set out in this Notice, the Court will consider it. You also may pay another lawyer to attend, but it's not required.

**24. May I speak at the hearing?**

You may ask the Court for permission to speak at the Fairness Hearing. If you want to appear at the Fairness Hearing and make a comment or objection, either in person or through an attorney hired at your own expense, you need to file a written notice of intention to appear with the Clerk of the Court. It must be postmarked by _____, 2016, and mailed to each of the addresses listed in Question 18. The written notice of intention to appear must: (i) include your name, address, telephone number, and signature; (ii) state that you intend to appear at the Fairness Hearing for In re: Credit Default Swaps Antitrust Litigation, Master Docket No.: 13 MD 2476 (DLC); (iii) provide proof that you are a member of the Settlement Class; and (iv) identify the specific grounds for your comment or objection including any reasons why you want to appear and be heard at the Fairness Hearing, as well as all documents or writings that you want the Court to consider.

## IF YOU DO NOTHING

**25. What happens if I do nothing?**

If you do nothing, you will not get any money from these settlements. Unless you exclude yourself, you will not be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Defendants or the Released Parties about the legal issues in this case.

## GETTING MORE INFORMATION

**26. How do I get more information?**

This Notice summarizes the settlements. More details are available in the Settlement Agreements. You can get complete copies of the Settlement Agreements at www.CDSAntitrustSettlement.com. The website has answers to common questions about these settlements, a claim form, and other information to help you determine whether you are a Settlement Class Member and whether you are eligible for a payment. You also may call 1-888-744-0531 or write to the Claim Administrator at Credit Default Swaps Antitrust Litigation, c/o Garden City Group, P.O. Box 10254, Dublin, OH 43017-5754.


DATED: _____, 2015                                                                    BY ORDER OF THE COURT


In re Credit Default Swaps Antitrust Litigation
c/o Garden City Group
P.O. Box 10254
Dublin, OH 43017-5754
**IMPORTANT COURT DOCUMENT**